IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| G.A., individually and on<br>behalf of her minor child,<br>GZ.A.,<br><br>      Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAII, DEPARTMENT<br>OF EDUCATION, and KATHRYN<br>MATAYOSHI, in her official<br>capacity as Acting<br>Superintendent for the Hawaii<br>Public Schools,<br><br>      Defendants.<br>_____ | CIVIL NO. 10-00730 LEK-BMK |

**ORDER AFFIRMING THE HEARINGS OFFICER'S NOVEMBER 10, 2010 DECISION**

Before the Court is an appeal by Plaintiffs G.A. ("Mother"), individually and on behalf of her minor child, GZ.A. ("Student"), (collectively "Plaintiffs"), of the Administrative Hearings Officer's ("Hearings Officer") November 10, 2010 Findings of Fact, Conclusions of Law and Decision ("Decision") dismissing Plaintiffs' Request for Impartial Hearing.[1] Plaintiffs filed their Opening Brief in the instant case on May 31, 2011. Defendants Kathryn Matayoshi, in her official capacity as Superintendent of the Hawai'i Public Schools, and the Department of Education, State of Hawai'i (collectively "the DOE"

_____

[1] The Decision can be found in the Administrative Record on Appeal ("ROA") at 33-50, and attached as Exhibit A to Defendants' Answering Brief.

or "Defendants") filed their Answering Brief on June 15, 2011.
The Court heard oral argument in this matter on August 22, 2011.
Appearing on behalf of Plaintiffs was Keith Peck, Esq., and
appearing on behalf of Defendants was Jerrold Yashiro, Esq.
After careful consideration of the parties' briefs, the arguments
of counsel, and the relevant legal authority, the Decision is
HEREBY AFFIRMED.

**BACKGROUND**

## I.    Factual and Administrative Background

At the time of the Decision, Student was thirteen years
old.  Student is eligible to receive special education and
related services under the IDEA under the eligibility category
Specific Learning Disabled.  She has attended Hawaii Mission
Academy ("HMA") since 2008.  [Decision at 4; ROA at GA 008.]  For
the 2009-2010 school year, Student was placed at HMA pursuant to
a prior Hearings Officer's order following a due process hearing.
[Decision at 4.]  For the 2009-2010 school year, Student was in
the 6th grade at HMA.  [Id.]

On July 25, 2010, Plaintiffs filed a Request for
Impartial Due Process Hearing ("RIH") with the DOE, which
transmitted it to the Office of Administrative Hearings,
Department of Commerce and Consumer Affairs.  [ROA at 1-14.]  The
RIH states that:

Student prevailed in a contested hearing decided on October 14, 2009. The hearings officer determined that the DOE denied her a FAPE and that the private services her parents funded were appropriate. He ordered the DOE to reimburse her parents for "Student's Private Placement school tuition and Student's private Reading Tutor, . ."

The DOE proposed a change in placement through a subsequent IEP meeting and offer, which parents rejected for the reasons that follow.

[RIH at 3.] The DOE proposed placing Student at the DOE schools, including Waimalu Elementary for remainder of the 2009-2010 school year, and then to Aiea Intermediate for the 2010-2011 school year. The RIH asserts that the Individualized Education Program ("IEP"), dated May 24, 2010, is flawed for the following reasons:

a. The IEP meeting was conducted without the participation of the child's teachers. Student requires modifications to her instruction that are not reflected in the Supplementary Aides and Services section of her IEP. She needs a small class size; close instructional help; modified work level and content; modifications in her non-special education classes; extended time for class and home work assignments; Student's Goals and Objectives are inappropriate to address each of her needs. Had the private school teachers' been involved in the development of the IEP, this could have been addressed.

b. The IEP offers to provide services during the intersession under the category of Extended School year on a public campus for 4 hours per week. This is insufficient to meet Student's needs. No tutor was tendered by the DOE for instruction on the public school campus. Therefore, the DOE failed to implement this services/aspect of the IEP. Parents attempted to mitigate the los[s] of

3

educational opportunity by seeking a private
tutor.

c.    Student[] needs special education
modifications/service in all academic
subjects.  Therefore, the frequency of
special education services at 510 per week is
inadequate.

[Id. at 4-5.]

The RIH sought the following:

1.    Find that stay put applies to this
matter;

2.    find that the DOE failed to offer FAPE;

3.    find that the private services are
appropriate;

4.    find that Petitioners are the prevailing
party;

5.    order Respondent to reimburse
Petitioners for any educational and
related out-of-pocket costs, including
transportation that has not been paid by
the DOE;

6.    award attorneys fees and costs in
the prosecution of this and related
matters; and,

7.    enter such other and appropriate relief
as deemed just and necessary by this
court.

[Id. at 5-6.]

After a continuance, the due process hearing convened
on October 25 and 27, 2010.  [Decision at 3-4.]  The Hearings
Officer filed the Decision on November 10, 2010.

The Hearings Officer framed the issues presented in the

RIH as follows:

> 1. Whether the individualized education program ("IEP") meeting that was conducted on May 24, 2010, and the resulting IEP denied Student a free appropriate public education ("FAPE") because the IEP meeting was conducted without the participation of Student's teachers from the Private Placement School;
>
> 2. Whether the May 24, 2010 IEP provided Student with sufficient extended school year ("ESY") services during the intersession; and
>
> 3. Whether the May 24, 2010 IEP provided Student with an appropriate amount and frequency of special education services.

[Id. at 4.]

The Decision summarized the process for putting together the May 24, 2010 IEP at issue. [Id. at 4-12.] The Hearings Officer found, *inter alia*:

> 3. On or about January 27, 2010, the Home School Principal called the Private Placement School Principal to arrange a date and time for the Home School staff to observe Student at the Private Placement School. The Private Placement School Principal agreed to allow the Home School staff to observe Student at the Private Placement School.
>
> . . . .
>
> 7. On February 22, 2010, the DOE Speech Pathologist and Student's Home School Care Coordinator conducted observations of Student at the Private Placement School, and completed their respective Student Observation Forms.
>
> 8. On May 11, 2010, the DOE Speech Pathologist and Student's Home School Care Coordinator conducted observations of Student at the Private Placement School, and completed their respective Student Observation Forms. During

their observations of Student at the Private
Placement School on May 11, 2010, the DOE Speech
Pathologist and Student's Home School Care
Coordinator spoke to Student's Private Placement
School Teacher who provided them with information
on Student's academic progress at the Private
Placement School.

.    .    .    .

11.    On or about May 11, 2010, the Private
Placement School provided Student's Home School
Care Coordinator with a copy of Student's Status
Report from the Private Placement School that had
been completed in part by Student's Private
Placement School Teacher.

12.    By Conference Announcement dated May 11,
2010, the Home School Principal informed Parents
that the Home School wanted to have a conference
regarding Student on May 24, 2010, to: a)
determine Student's educational placement, and b)
review Student's plan's effectiveness/
appropriateness in meeting Student's needs, review
and renew the plan, if needed.

13.    On May 24, 2010, the Home School IEP
team met.  The May 24, 2010 IEP meeting was
intended to develop a "transition" IEP because
Student's annual IEP was not scheduled for an
annual review until November 12, 2010, and the IEP
team was aware that Student had been placed at the
Private Placement School for the 2009 - 2010
school year pursuant to the Hearings Officer's
order in the previous due process hearing.  The
members of the IEP team were:

    a.    Student's Home School Care Coordinator/
          Home School Special Education Teacher
    b.    the DOE Intermediate School Student
          Services Coordinator ("SSC")
    c.    the DOE Intermediate School Regular
          Education Teacher
    d.    the DOE Speech - Language Pathologist
    e.    the Home School Regular Education
          Teacher
    f.    the DOE Intermediate School Special
          Education Teacher

      g.    Mother
      h.    the Home School Principal
      i.    the DOE District Educational Specialist

    No one from the Private Placement School attended
    the May 24, 2010 IEP meeting.

[Id. at 4-7.]  The Hearings Officer also set forth findings

regarding witness testimony at the due process hearing,

including, *inter alia*:

      9.   At the hearing, Student's Home School
    Care Coordinator testified credibly and
    persuasively that during his conversation with
    Student's Private Placement School Teacher on
    May 11, 2010, Student's Private Placement School
    Teacher informed Student's Home School Care
    Coordinator that Student did not have problems
    with retaining information/skills after breaks
    during the school year.

      10.   At the hearing, Student's Home School
    Care Coordinator also testified credibly and
    persuasively that during his conversation with
    Student's Private Placement School Teacher on
    May 11, 2010, Student's Home School Care
    Coordinator invited Student's Private Placement
    School Teacher to attend the IEP meeting scheduled
    for May 24,
    2010.  Student's Private Placement School Teacher
    informed Student's Home School Care Coordinator
    she might not be able to attend the May 24, 2010
    IEP meeting, but that if Student's Private
    Placement School Teacher could not attend the IEP
    meeting on May 24, 2010, the Private Placement
    School Principal would attend the May 24, 2010 IEP
    meeting.

[Id. at 6-7.]

    With respect to the May 24, 2010 IEP meeting and the

resulting IEP, the Hearings Officer found:

      14.   During the IEP meeting, Student's Home
    School Care Coordinator and the DOE Speech –

Language Pathologist shared their observations of
Student at the Private Placement School, as well
as Student's academic records that were obtained
from the Private Placement School with the rest of
the IEP team. Mother informed the IEP team of
Student's progress at the Private Placement
School, as well as Mother's concerns. The IEP
team incorporated Student's academic information
from the Private Placement School into Student's
IEP, and specifically, the IEP team included
information from the May 11, 2010 Student's Status
Report from the Private Placement School, into the
Present Levels of Educational Performance ("PLEP")
section of the IEP. Mother's concerns were
included under the "Parental Concerns" portion of
the PLEP section of the IEP.

15. The May 24, 2010 IEP indicated that
Student met the standard for extended school year
("ESY") services, and Student would be receiving
"special education (tutoring) 4 hours per week
during the school breaks for school year 2009-2010
to meet her educational needs." At the hearing,
the DOE District Educational Specialist testified
credibly and persuasively that at the May 24, 2010
IEP meeting, based upon the information that was
obtained regarding Student's needs, it did not
appear that Student met the eligibility criteria
for ESY services. However, because the Hearings
Officer's order in the previous due process
hearing required the DOE to pay for Student's
reading tutor for the 2009-2010 school year, the
DOE District Educational Specialist felt that
Student would benefit from continuing to have the
same tutor and the same amount of tutoring during
the school breaks covered by the May 24,2010 IEP.
Consequently, although the May 24, 2010 IEP
indicated that Student met the standard for ESY,
the IEP did not actually intend for Student to
receive the entire panoply of special education
and related services for ESY.

[Id. at 6-7.]

Ultimately, the Hearings Officer concluded that,

. . . Petitioners did not prove by a
preponderance of the evidence that failure to

8

include Student's Private Placement School Teacher in the May 24, 2010 IEP meeting violated the IDEA, and denied Student a FAPE.

Moreover, the Hearings Officer further finds and concludes that Petitioners failed to prove by a preponderance of the evidence that the special education and related services specified in the May 24, 2010 IEP, and as well as the goals and objectives contained therein, were inappropriate.
. . . .

Based upon the credible and persuasive evidence presented at the hearing, the Hearings Officer must conclude that Petitioners failed to prove by a preponderance of the evidence that Student was eligible to receive ESY services at all.

The only evidence of Student's retention and recoup issues was provided by Mother's testimony which noted that Student had some difficulty with her homework when Student returned to the Private Placement School after the summer break.

On the other hand, the Hearings Officer finds the testimony of Student's Home School Care Coordinator to be more credible in that Student's Private Placement School Teacher informed Student's Home School Care Coordinator that Student did not have problems with her academics after returning from school breaks.

The Hearings Officer also finds and concludes that the credible and persuasive testimony of the DOE District Educational Specialist proved by a preponderance of the evidence that the IEP did not actually find that Student met the standard for ESY, and instead, the IEP team, at the insistence of the DOE District Educational Specialist, wanted to allow Student to continue to receive tutoring in reading during school breaks, for purposes of continuity.
. . . .

Based upon the credible and persuasive evidence presented at the hearing, the Hearings Officer must conclude that Petitioners failed to prove by a preponderance of the evidence that Student required more than 510 hours per week of special education services.

The Hearings Officer finds and concludes that the preponderance of the evidence established that the May 24, 2010 IEP provided that Student would

> receive specialized instruction for English and
> math for 510 minutes per week in the special
> education setting, and that Student would be
> participating in the general education setting for
> science, social studies, extra curricular
> activities, and all other academic and
> non-academic activities.

[Id. at 16-18.]

The Hearings Officer therefore concluded that Plaintiffs failed to prove that the challenged IEP denied Student a FAPE, and dismissed the RIH and found the DOE to be the prevailing party. [Id. at 17.] The instant action followed.

## II. **Plaintiffs' Opening Brief**

Plaintiffs argue in their Opening Brief that Student was denied a FAPE because: (1) the IEP team was not properly composed and failed to address Student's unique needs; (2) the IEP was not fully implemented; and (3) the frequency of special education services was not sufficient.

### A. **The IEP Team Was Not Properly Composed**

Plaintiffs contend that the IDEA requires that a "general education teacher 'of the child' attend the IEP meeting in order that someone with actual knowledge of the Student's needs attend the IEP meeting." [Opening Br. at 2 (citing 34 CFR § 300.344, implementing 20 U.S.C. § 1414(d)(1)(B)(ii)).] Plaintiffs assert that the DOE did "not invite any member of Student's then-current private program to attend" the May 24, 2010 IEP meeting. [Id.]

According to Plaintiffs, the failure to properly
constitute the IEP team affected the appropriateness of the
program offered.  Mother maintains that Student needs additional
modifications, including small class size, close instructional
help, modifications to the content and curriculum levels of
instruction, and extended time for class work and home work.
Plaintiffs argue that the only person able to knowledgeably
discuss Student's needs based on her in-school performance was
not asked to attend the IEP meeting.  As a result, the IEP team
"made its decisions and formulated its offer in-the-dark."  [Id.
at 2-3.]

B.   **The IEP Was Not Fully Implemented**

Plaintiffs next argue that, although the IEP offered
Student ESY services, the DOE never actually offered Student any
ESY services.  Plaintiffs note that the IEP states that Student
will receive "special education (tutoring) 4 hours per week
during the school breaks for school year 2009-2010 to meet her
education."  [Id. at 3.]  The DOE, however, never tendered any
tutoring during the summer session, which Plaintiffs contend is a
substantive violation amounting to a denial of FAPE.  [Id.]

C.   **The Special Education Services Were Insufficient**

Finally, Plaintiffs assert that the IEP offered Student
only 510 minutes of special education per week, which is much
less than she required.  According to Plaintiffs, the IEP

11

acknowledged that Student was in the sixth grade, but reading at the second grade level. Further, Mother believed Student needs additional modifications to the content, methodology and delivery of instruction for all of Student's classes. [Id. at 3-4.]

In conclusion, Plaintiffs seek reimbursement for the private tuition and related costs.

## III. **Defendants' Answering Brief**

In Defendants' view, the Opening Brief presents three issues: (1) the IEP was not properly composed and failed to address Student's unique needs; (2) the IEP was not fully implemented; and (3) the frequency of special education services in the IEP was insufficient. [Answering Br. at 8.]

### A. **The IEP Team Was Properly Composed**

Defendants argue first that Plaintiffs have not met their burden of proving that the May 24, 2010 IEP was not appropriate. They argue that the evidence presented at the hearing below demonstrates that the DOE used current data, understood Student's unique needs, and offered her a placement that was reasonably calculated to confer an educational benefit to her. [Id. at 9.]

Defendants note that Plaintiffs allege that the DOE did not invite a teacher from Student's current private placement to attend the May 24, 2010 IEP meeting. Defendants argue, however, that testimony at the hearing was that the DOE did invite

Ms. Chow, Student's teacher at HMA, but that she was not able to attend. Defendants cite the following testimony of Ryan Yamada, Student's DOE's care-coordinator:

> We had done an observation at Hawaii Mission a few weeks before the conference and I did personally invite her 6th grade teacher at that time, Mrs. Chow, that we would be having an IEP on the 24th and that she was invited to participate. She had informed me that she maybe wouldn't be able to attend that because of previous obligations that she had after school, but she said if she couldn't attend, she would have her principal attend.

[Id. at 10 (quoting 10/27/10 Trans., Vol II, 50:14-22).] Defendants point to the Hearings Officer's determination that this testimony from Mr. Yamada was credible and persuasive. [Id.]

According to Defendants, although Ms. Chow did not attend the IEP meeting, the DOE had conducted observations of Student at HMA. Mr. Yamada and Kimberly Nelon, a speech language pathologist, observed Student in her private placement and completed Student Observation forms. Then, on May 11, 2010, Mr. Yamada, Ms. Nelon, Veronica Ham, special education teacher from Aiea Intermediate School, and Carla Carvalho, student services coordinator from Aiea Intermediate School conducted observations of Student at HMA, and Mr. Yamada and Ms. Nelon again

submitted Student Observation forms.[2]  [Id. at 11.]  Following
the May 11, 2011 observation, Mr. Yamada and Ms. Nelon
interviewed Ms. Chow regarding Student's performance, behavior,
work habits, and academic level.  [Id. at 12-13.]

Ms. Chow also completed a Student Status Report for the
DOE, which includes information about Student's performance in
academic subjects like reading, math, language arts, art,
physical education and music.[3]  The Student Status report also
addresses Student's adaptive behavior with respect to
communication, responsibility, and self-care, and Student's
emotional and social behavior, home environment and attendance.
[Id. at 13-14.]  Defendants argue that, despite Ms. Chow's
absence from the May 24, 2010 IEP meeting, the IEP team had the
benefit of much information about Student and her unique needs
based on observations at HMA and the Student Status Report.  [Id.
at 14.]

## B.  **The May 24, 2010 IEP Was Implemented**

Defendants next turn to Plaintiffs' ESY-related claim
that the DOE did not tender any tutoring during the summer
intersession.  Defendants, however, claim that this issue was not
presented in this form at the administrative hearing.  At the

---

[2] The Student Observation forms are located in the ROA at GA
56-63 (Respondents' Exhibit 5).

[3] The Student Status Report is located in the ROA at GA 30-
32 (Respondents' Exhibit 2).

hearing, the issue was framed as whether the IEP provided
sufficient ESY services during the intersession, according to
Defendants.  [Id. at 15.]  Plaintiffs did not present evidence at
the hearing that the DOE failed to provide tutoring services over
the summer months; rather, the evidence presented was that
Plaintiffs had not been reimbursed for the tutoring services.

Defendants contend that Student did receive tutoring of
four hours per week and that the DOE reimbursed Plaintiffs for
all tutoring sessions that were submitted to the DOE.  They point
to the following testimony of Gayle Ishikawa, District Education
Specialist:

> HEARING OFFICER: Just for clarification, your
> answer to Mr. Yashiro's question is that you paid
> all of the bills that were presented to you by
> mother?
>
> THE WITNESS: Yes.

[Id. at 15 (quoting 10/27/10 Trans., Vol II, 112-113:23-1).]

## C.    The Frequency of Special Education Services Was Sufficient

Finally, Defendants argue that Plaintiffs have not met
their burden because they presented no evidence showing that the
May 24, 2010 IEP did not provide an appropriate educational
program for Student.  Defendants state that Plaintiffs' only
witness at the hearing below was Mother, who testified that
Student was making good progress in her private placement at HMA.
They argue, however, that Plaintiffs did not make any showing

15

that the DOE failed to offer Student a FAPE.  [Id. at 15.]

Nor did Plaintiffs demonstrate that Student's private placement was appropriate, according to Defendants.  Mother testified that she did not know the details regarding the modifications provided for Student at HMA.  [Id. at 17 (citing 10/25/10 Trans., Vol. I, 15:2-5).]  According to Defendants, the issue of whether the private placement was appropriate was not relevant and the Hearings Officer did not need to rule on the issue because Plaintiffs failed to show that the DOE did not offer a FAPE.  [Id. at 16.]

Defendants argue that, because the IDEA requires that placement be in the least restrictive environment, the DOE is responsible for providing a FAPE to students with disabilities within the public school system if at all possible, and not at a private institution such as HMA.  [Id. at 16 (citing 34 C.F.R. §§ 300.114 and 300.116).]  Further, they argue that the evidence presented at the due process hearing showed that Student's IEP team considered IDEA requirements and placed Student at Waimalu Elementary School, which is the least restrictive environment, in order for her to obtain benefit from her education.  [Id.]

In conclusion, Defendants urge the Court to affirm the Decision because: 1) Plaintiffs failed to meet their burden of proof in this appeal, and 2) the Hearing Officer's Decision must be given deference as the findings in the Decision were thorough

and careful.  [Id. at 20.]

STANDARD

## I.  IDEA Overview

"The IDEA is a comprehensive educational scheme,
conferring on disabled students a substantive right to public
education and providing financial assistance to enable states to
meet their educational needs."  Hoeft ex rel. Hoeft v. Tuscon
Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing
Honig v. Doe, 484 U.S. 305, 310, 108 S. Ct. 592, 597, 98 L. Ed.
2d 686 (1988)).  It ensures that "all children with disabilities
have available to them a free appropriate public education that
emphasizes special education and related services designed to
meet their unique needs and prepare them for further education,
employment, and independent living[.]"  20 U.S.C. §
1400(d)(1)(A).

The IDEA defines FAPE as:

> special education and related services that –
>     (A) have been provided at public expense,
>     under public supervision and direction, and
>     without charge;
>     (B) meet the standards of the State
>     educational agency;
>     (C) include an appropriate preschool,
>     elementary school, or secondary school
>     education in the State involved; and
>     (D) are provided in conformity with the
>     individualized education program required
>     under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the
IDEA, a state educational agency receiving federal funds must

17

evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP. See generally 20 U.S.C. § 1414. The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted). Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child." Id. (citations omitted). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." Id. (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" Id. (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201

(1982)).  The FAPE need only be "appropriately designed and
implemented so as to convey [the] [s]tudent with a meaningful
benefit."  Id. at 433 (citations and quotation marks omitted).

If a parent disagrees with the contents of an IEP, the
parent may challenge the contents thereof by demanding an
administrative due process hearing to be conducted by the local
or state educational agency.  See 20 U.S.C. § 1415(b)(6),
(f)(1)(A).  Parents may also send their student to a private
program and seek retroactive tuition reimbursement from the
state.  See Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484,
2493, 2496 (2009) (citations omitted).  Where parents
unilaterally withdraw a child from public school, they "do so at
their own financial risk."  Id. at 2496 (citations and internal
quotation marks omitted).  Parents challenging an IEP are
entitled to reimbursement only if "a federal court concludes both
that the public placement violated IDEA and the private school
placement was proper under the Act."  Id. (citations and internal
quotation marks omitted); see also 34 C.F.R. § 300.148(c).

## II.  **Standard of Review**

The standard for district court review of an
administrative decision under the IDEA is set forth in 20 U.S.C.
§ 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the
> court –
>     (i) shall receive the records of the
>     administrative proceedings;

> (ii) shall hear additional evidence at the
> request of a party; and
> (iii) basing its decision on the
> preponderance of the evidence, shall grant
> such relief as the court determines is
> appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. <u>L.M. v. Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 908 (9th Cir. 2009) (quoting <u>Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. <u>J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" <u>L.M.</u>, 556 F.3d at 908 (quoting <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 892 (9th Cir. 1995)). The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." <u>Cnty. of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and

quotation marks omitted)).  Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." <u>Wartenberg</u>, 59 F.3d at 891.  "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed <u>de novo</u>." <u>A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.</u>, 627 F.3d 773, 778 (9th Cir. 2010) (citing <u>Wartenberg</u>, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" [<u>Rowley</u>, 458 U.S. at 206-07] (footnotes omitted).  "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." <u>Id.</u> at 207.

<u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling.  <u>Hood v. Encinitas Union Sch. Dist.</u>, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted).  The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed.  <u>J.W.</u>, 626 F.3d at 438 (citation omitted).

## DISCUSSION

As a general matter, the Court FINDS that the Hearings Officer's findings and conclusions are "thorough and careful" and therefore entitled to increased deference. See L.M., 556 F.3d at 908 (citation and internal quotation marks omitted). At the hearing, the Hearings Officer actively questioned witnesses, and ruled with promptness on objections. The Decision set forth findings of fact and justified its conclusions of law with reference to the factual record presented over the two-day hearing. The Hearings Officer summarized the testimony of the teachers, therapists, and consultants involved in the process, and created a detailed decision explaining his factual findings and legal conclusions.

## I.  Composition of IEP Team

Plaintiffs contend that Student was denied a FAPE because a teacher from her private school did not attend the May 24, 2010 IEP meeting. The parties dispute whether Student's private placement teacher was invited to the May 24, 2010 IEP meeting. Mother testified that, after the May 24, 2010 meeting, she talked to Student's teachers, "and according [to] them they don't know anything about the meeting." [ROA, 10/25/10 Trans. at 11.] The Hearings Officer, however, concluded that Defendants' testimony was more credible, and found as follows:

> At the hearing, Student's Home School Care
> Coordinator also testified credibly and

22

persuasively that during his conversation with
Student's Private Placement School Teacher on May
11, 2010, Student's Home School Care Coordinator
invited Student's Private Placement School Teacher
to attend the IEP meeting scheduled for May 24,
2010.  Student's Private Placement School Teacher
informed Student's Home School Care Coordinator
she might not be able to attend the May 24, 2010
IEP meeting, but that if Student's Private
Placement School Teacher could not attend the IEP
meeting on May 24, 2010, the Private Placement
School Principal would attend the May 24, 2010 IEP
meeting.

[Decision at 6-7.]

The IDEA sets forth the requirements for an IEP team as

follows:

The term "individualized education program team"
or "IEP Team" means a group of individuals
composed of–

(i) the parents of a child with a disability;

(ii) not less than 1 regular education teacher of
such child (if the child is, or may be,
participating in the regular education
environment);

(iii) not less than 1 special education teacher,
or where appropriate, not less than 1 special
education provider of such child;

(iv) a representative of the local educational
agency who–

     (I) is qualified to provide, or supervise the
     provision of, specially designed instruction
     to meet the unique needs of children with
     disabilities;

     (II) is knowledgeable about the general
     education curriculum; and

     (III) is knowledgeable about the availability
     of resources of the local educational agency;

23

(v) an individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in clauses (ii) through (vi);

(vi) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and

(vii) whenever appropriate, the child with a disability.

20 U.S.C. 1414(d)(1)(B), see also 34 CFR § 300.321.

The student's private placement teacher is not a statutorily-mandated member of the IEP team under the above cited authorities.  See Virginia S. ex rel. Rachael M. v. Department of Educ., Hawaii, Civil No. 06-00128 JMS/LEK, 2007 WL 80814, at *7 n.10 (D. Hawai'i Jan. 8, 2007) (citing Cone v. Randolph County Sch., 302 F. Supp. 2d 500 (M.D.N.C. 2004)) (holding that there is no statutory requirement that a teacher from the current school be part of the team).

Moreover, even if Plaintiffs could establish a procedural violation on these facts, there is insufficient evidence in the record that any violation caused a "loss of educational opportunity" or "seriously infringe[d] the parents' opportunity to participate in the IEP formulation process." Capistrano, 556 F.3d 909.  Here, members of the IEP team twice observed Student in her private placement and completed Student Observation forms.  Student's care-coordinator also interviewed her current private school teacher regarding Student's

24

performance, behavior, work habits, and academic level.  Further,
her private school teacher, Ms. Chow, completed a Student Status
Report for the DOE, which the IEP team considered in formulating
the IEP, detailing Student's performance in academic subjects,
and her adaptive behavior with respect to communication,
responsibility, and self-care, and Student's emotional and social
behavior, home environment and attendance.  [ROA at GA 30-32.]
The Court concludes that the IEP team had the benefit of much
information about Student and her unique needs based on
observations at HMA, and feedback from her private placement
teacher.  Plaintiffs have not established that Student was denied
a FAPE because a teacher from her private school did not attend
the May 24, 2010 IEP meeting.

## II.  **ESY**

The ESY section of the IEP states that Student "will
receive special education (tutoring) 4 hours per week during the
school breaks for school year 2009-2010 to meet her educational
needs." [ROA at GA 25.]  It also states that Student's "ESY will
consist of tutoring, not to exceed 4 hours per week when there
are breaks in the 2009-2010 school year.  Mileage reimbursement
that corresponds with the tutoring service will be made upon
presentation of request." [Id.]

Plaintiffs argue that, although the IEP offered Student
ESY services, the DOE never actually offered Student any ESY

during the summer intersession, which Plaintiffs contend is a substantive violation amounting to a denial of FAPE. Defendants argue that the IEP was implemented and that Plaintiffs presented no evidence at the administrative hearing that the DOE failed to provide tutoring services over the summer months.

As an initial matter, the Court notes that Plaintiffs acknowledged at the administrative hearing that they rejected the IEP. [ROA, 10/27/10 Trans. at 131-32.] It is unclear why Plaintiffs argue that the DOE did not implement the ESY, when they acknowledge that they did not accept the May 24, 2010 offer of FAPE.

In any event, the record does not indicate that the DOE failed to provide tutoring to Student. At the hearing, Mother testified that Plaintiffs procured their own tutoring during the summer intersession following the May 24, 2010 IEP.

> Q. So with regard to the four hours a week during the summer months after this IEP of 5/24/2010, who found the tutor?
>
> A. Me.
>
> Q. Who paid the tutor?
>
> A. Me. Us, I mean, sorry.
>
> . . . .
>
> Q. Okay. Were you contacted by the DOE prior to the beginning of the summer or during the summer after the 5/24/2010 IEP meeting, last summer, were you contacted saying we have a tutor, come in and get – come and sign up with her?

A.   No, no.

                . . . .

                Q.   Since this case was filed, this new
        case, have you been reimbursed for the expenses
        you've incurred?

                A.   No, no, I've been waiting [for them to]
        pay me. . . .  I gave them ahead of time, I gave
        them everything, and also since we talking about
        that, they always give me excuses that I didn't do
        it this way, I didn't do it that way, that's why
        it takes awhile for them to give it to me.

[ROA, 10/25/10 Trans. at 24, 26-27.]

        Gayle Ishikawa, a district education specialist who

works with special education students, testified that at the

May 24, 2010 IEP meeting, she supported the insertion of the ESY

tutoring, "which [Student] was awarded actually with the previous

due process request. . . .  She was awarded with a reading

tutor. . . .  That tutoring was four times a week, an hour each

time, and that tutor was charging her $40 an hour."  [Id. at 108-

09.]

        Ms. Ishikawa explained that the Plaintiffs used tutor

Josie Mullis from at least May 2009, until December 2009, when

Mother informed Ms. Ishikawa that Plaintiffs "were not able to

work out their differences and she stopped going to Josie.  And

after that she found another tutor."  [Id. at 110.]  Ping Collins

then tutored student until May 2010.  [Id. at 111-12.]

                Q.   Now, [Mother] went to find her own
        tutors or did the DOE provide the tutors for her.

27

A.    [Mother] found her own tutors.

. . . .

Q.    So what happened then in regards to the tutoring for [Student]?

A.    So then school ended in May and we were looking around for tutors for her also, so as I found one that, you know, as [Mother] is telling me they're moving to Ewa, you know, I start looking in the Ewa area, so I did find one, but she found one sooner and when we looked at her training and her credentials and that they were going to get along well, you know, we went with Sally Hill.

[Id. at 110, 112.]

Ms. Ishikawa testified that the DOE reimbursed Mother for all tutoring bills presented to her.

HEARING OFFICER:    Just for clarification, your answer to Mr. Yashiro's question is that you paid all of the bills that were presented to you by mother?

A.    Yes.

BY MR. YASHIRO:

Q.    As far as you can remember, Josie Mullis has or [Mother] was reimbursed for all the times that Josie tutored [Student]?

A.    Yes, yes.

Q.    And how about Ping?

A.    Ping, you know, like Mr. Maile said, all the bills that were presented to us regarding Ping's tutoring were reimbursed back to the mother.

Q.    Okay. And so that includes Sally Hill?

A.    No, that doesn't include Sally Hill. I

28

> understand that [Mother] does have bills in and
> those were submitted to our section called vendor
> payment, which is part of the big state, and they
> are in the process of cutting that check.  So only
> that one last payment or the last time mom
> submitted bills, that one is like within either
> last night or today could be done.

[Id. at 113.]

Thereafter, Plaintiffs presented no evidence that they were not reimbursed for all tutoring charges incurred, including for tutoring by Ms. Hill during the July and August 2010 period. The evidence presented shows that Student received four hours of tutoring per week, during the school year and during the ESY, and that Mother herself selected the tutor with reimbursement from the DOE.  To the extent Plaintiffs assert that the DOE never tendered tutoring as contemplated by the IEP's ESY section, which resulted in a denial of a FAPE, the Court disagrees and FINDS that Plaintiffs have not established that Student was denied a FAPE.

## III. **Frequency of Special Education Services**

Last, Plaintiffs claim that the May 24, 2010 IEP offered Student only 510 minutes of special education per week, but Mother believed Student needed modification of the content, methodology, and delivery of instruction in all classes.  At the hearing, Plaintiffs argued that the frequency of special education services in the IEP is wrongly defined as the time Student spends in a special education classroom, not as it should

29

be defined as the time periods when the Student needs the modification of the content, methodology, and/or delivery of instruction. Plaintiffs, however, provide no legal authority or support for this argument.

Further, Plaintiffs presented no evidence at the administrative hearing or to this Court showing that the May 24, 2010 IEP did not provide an appropriate educational program for Student. At the hearing, Mother testified that she did not know the details of the modifications Student received at HMA, her private placement, but that Student did receive extra time for homework assignments, and that she was allowed to take tests after reviewing them with the teacher. [ROA, 10/25/10 Trans. at 15.] Mother did not testify regarding the proposed special education placement in the DOE school. Plaintiffs presented no data, expert opinion, or other evidence that the IEP's provision of 510 minutes of English and math special education per week, provided in the resource room, in conjunction with classes in the general education setting for science, social science, and extracurricular activities was insufficient. The Court will not second-guess the IEP team's provision of special education services, absent contrary evidence. The IDEA relies heavily upon the expertise of school districts to meet its goals and this Court will not substitute its own judgment of sound educational policy for that of the educational authorities. See Cnty. of San

<u>Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1548, 1466
(9th Cir. 1996).  Although Plaintiffs are not satisfied with the
DOE's offer of FAPE, an IEP need not conform to a parent's wishes
in order to be sufficient or appropriate.  <u>See</u> <u>Shaw v. District
of Columbia</u>, 238 F. Supp. 2d 127, 139 (D.D.C. 2002) (stating that
the IDEA does not provide for an "education . . . designed
according to the parent's desires") (citation omitted).

     The Court FINDS that Plaintiffs failed to prove by a
preponderance of the evidence that Student required more that 510
minutes per week of special education services or that the IEP is
not reasonably calculated to enable Student to receive
educational benefits.

     In summary, the Court agrees with the Hearings Officer
that Plaintiffs did not prove by a preponderance of the evidence
that the May 24, 2010 IEP meeting violated the IDEA, and denied
Student a FAPE.

<u>**CONCLUSION**</u>

     On the basis of the foregoing, the Hearings Officer's
November 10, 2010 Findings of Fact, Conclusions of Law and
Decision is HEREBY AFFIRMED.

     IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2011.



               /S/ Leslie E. Kobayashi
               Leslie E. Kobayashi
               United States District Judge

**G.A., INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD GZ.A. V. DEPARTMENT OF EDUCATION, ET AL; CIVIL NO. 10-00730 LEK-BMK; ORDER AFFIRMING THE HEARINGS OFFICER'S NOVEMBER 10, 2010 DECISION**